636 P.2d 895

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David B. CARNES, Defendant-Appellant.**

**No. 5092.**

Court of Appeals of New Mexico.

Nov. 3, 1981.

Mary Lou Carson, Tierra Amarilla, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Judge.

Convicted of eleven felonies and one misdemeanor, defendant appeals. We (1) answer all but one issue summarily, and (2) discuss the failure of the trial court to define "hostage" in connection with the kidnapping offenses.

*Issues Answered Summarily*

▇ (a) Defendant escaped from the Sandoval County jail. In attempting to prove that this was an escape from the

penitentiary, the State put on evidence to meet the statutory requirement that defendant had been lawfully committed to the penitentiary. See § 30–22–9, N.M.S.A.1978. A part of this evidence was testimony that defendant had two prior convictions resulting in consecutive nine-year sentences to the penitentiary, for a total of eighteen years. In claiming prejudice because the jury was informed of the length of his sentence, defendant overlooks the fact that the State was required to prove an unexpired commitment to the penitentiary and overlooks the fact that the trial court excluded testimony as to the nature of defendant's prior offenses—criminal sexual penetration. The trial court properly applied Evidence Rule 403 in its ruling admitting and excluding evidence directed to defendant's penitentiary commitment.

■ (b) Testimony as to defendant's commitment was by an assistant district attorney. Permitting this assistant to testify was not error; the assistant's participation in the trial was only as a witness. *State v. Martinez*, 89 N.M. 729, 557 P.2d 578 (Ct.App.1976), cert. denied, 430 U.S. 973, 97 S.Ct. 1663, 52 L.Ed.2d 367 (1977).

(c) After escaping, defendant, by threats while armed with a sharpened prong from a pitchfork, took control of the automobile occupied by Corrine Gallegos and her two-year-old daughter, Natalie. Defendant drove the car to Valencia County and held Corrine and Natalie prisoners, in various hiding places, for most of the day. They escaped while defendant was getting gasoline for the car.

■ Two of defendant's convictions were for aggravated assault upon Corrine and Natalie. Defendant's challenge to the sufficiency of the evidence for these convictions and the venue of these offenses is without merit. Reviewing the evidence pursuant to *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978), the evidence is substantial that an aggravated assault occurred, as to both victims, during defendant's avoidance of two men who approached defendant's hiding place in Lover's Lane in Valencia County.

Two of defendant's convictions were for kidnapping of Corrine and Natalie. These convictions involved the "hostage" aspect of our kidnapping statute. Defendant incorrectly asserts there was no evidence that they were held hostage. The evidence sustains the inference that Corrine and Natalie were held as security for the forbearance of officers attempting to recapture defendant, an escaped felon. See definition of "hostage," subsequently in this opinion.

(d) The offenses involving Corrine and Natalie occurred on April 8, 1980. On the evening of April 9, 1980, defendant pushed his way into the home of Dora Ortega in Valencia County. Defendant does not challenge the sufficiency of the evidence as to his conviction of several offenses involving Dora, as the victim.

While in Dora's home, defendant tied and gagged Dora and her daughter Debbie, who promptly attempted to loosen these bonds. Defendant took Debbie from her home while armed with what appeared to be a screwdriver, holding on to her by the loosened gag. He pulled her hair when she fell near a ditch and, as Debbie escaped, defendant told Debbie: "'You're going to die now.'" The evidence supports defendant's conviction of aggravated assault on Debbie. The evidence also permits the inference that defendant held Debbie hostage as security for the forbearance of officers seeking defendant's recapture; thus, there is substantial evidence to support defendant's conviction of kidnapping Debbie.

(e) Defendant was subsequently captured at a campground. He was charged with aggravated assault upon two peace officers. The assault allegedly occurred during the recapture. Defendant, seeking to establish that these two charges did not occur in Valencia County, attempted to extract favorable venue answers from a witness. The witness, in turn, attempted to explain his answers. This resulted in two exchanges between counsel and the trial court, in which the trial court remarked that the witness was not giving the answers that counsel wanted, but the witness was giving

his best answer in accordance with the witness's ability. In each exchange, the trial court stated that the witness could explain his answers.

▇ The remarks by the trial court were within the trial court's authority under Evidence Rule 611(a) to control the manner of interrogating witnesses and to protect a witness from harassment. The trial court stated to counsel that the problem was one of communication between counsel and the witness. The trial court explained to the jury that the testimony went to the boundary lines between Valencia and Torrance Counties, that this involved a legal issue which was not for the jury to decide. The trial court also told the jury that anything said by either counsel or the trial court was not to be held against defendant "in all fairness to him." The jury acquitted defendant of these two charges. The trial court's remarks did not deny defendant a fair trial, nor did such remarks constitute a basis for a mistrial. Compare *State v. Blakley*, 90 N.M. 744, 568 P.2d 270 (Ct.App. 1977). The evidence supports a finding of proper venue.

*Failure to Define Hostage*

There were three kidnapping charges— Corrine, Natalie and Debbie. Defendant was convicted of each charge. The kidnapping instruction as to each charge was in accordance with U.J.I.Crim. 4.02 (Judicial Pamphlet 19, Cum.Supp.1981). Each kidnapping charge was defined to include a requirement that defendant intended to hold the victim "as a hostage against her will."

The approved criminal jury instructions do not include a definition of hostage, and do not provide that the term should not be defined. Defendant requested an instruction defining "hostage" in accordance with *State v. Crump*, 82 N.M. 487, 484 P.2d 329 (1971):

> [T]he unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person.

There is no issue as to the legal correctness of this requested instruction. We have held the evidence was sufficient to raise a factual issue as to the victims being held as hostages.

▇ The trial court refused the requested instruction; defendant asserts this was error. Defendant contends he did not receive a fair trial because without a definition of the term "hostage," the jury could not properly determine whether the victims had, in fact, been held as hostages. The State answers that the trial court "was not required to give a definition or amplification instruction."

Three rules, as to refusing a requested instruction, are involved in this issue.

▇ (a) The failure to instruct the jury on the definition or the amplification of the elements of an offense is not error when there has been a failure to request such an instruction. *State v. Stephens*, 93 N.M. 458, 601 P.2d 428 (1979); *State v. Ervin*, 96 N.M. 366, 630 P.2d 765 (Ct.App.1981); *State v. Padilla*, 90 N.M. 481, 565 P.2d 352 (Ct.App. 1977). This rule is not applicable because defendant requested an instruction defining "hostage".

(b) Where there is no instruction defining an element of a criminal offense, and that element is not adequately covered by the instructions given, compare *State v. Gonzales*, 86 N.M. 556, 525 P.2d 916 (Ct.App. 1974), overruled on other grounds, *State v. Bender*, 91 N.M. 670, 579 P.2d 796 (1978), we have held that it would be error to refuse a requested instruction which was a proper definition. In *State v. Marquez*, 96 N.M. 740, 634 P.2d 1298 (Ct.App.1981), we held it would have been error to refuse a legally correct definition of "mental disease" as used in the approved instruction on the insanity defense. In *State v. Ruiz*, 94 N.M. 771, 617 P.2d 160 (Ct.App.1980), the trial court refused a requested instruction which would have told the jury how it was to determine whether the defendant was competent to give a statement. We reversed because the issue was not otherwise covered in the instructions. Common to

these two cases is that technical terms were involved. "Hostage" is not a technical term.

(c) Where the issue is the failure to instruct on a term or word having a common meaning, there is no error in refusing an instruction defining the word or term. The refusal of a requested instruction defining "entrusted" was not error. *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971). The failure to define "held to service against the victim's will" was not error. *State v. Aguirre*, 84 N.M. 376, 503 P.2d 1154 (1972). We point out that it would not have been error to have given the requested instruction which correctly defined "hostage". *State v. Griego*, 90 N.M. 463, 564 P.2d 1345 (Ct.App.1977). That is not the issue in this case. The issue is the refusal to give the requested instruction. There was no error because "hostage" is not a technical term; jurors could properly apply the common meaning of hostage, see *State v. Crump*, supra, and the application of the common meaning did not prejudice defendant.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.