4 P.3d 1221 (2000)
129 N.M. 230
2000-NMSC-017
STATE of New Mexico, Plaintiff-Respondent,
v.
Marcos MASCAREÑAS, Defendant-Petitioner.
No. 25,577.
Supreme Court of New Mexico.
May 25, 2000.
*1222 Phyllis H. Subin, Chief Public Defender, Lisabeth L. Occhialino, Assistant Appellate Defender, Santa Fe, for Petitioner.
Patricia A. Madrid, Attorney General, Steven S Suttle, Assistant Attorney General, Santa Fe, for Respondent.

OPINION
BACA, Justice.
{1} Defendant, Marcos Mascareñas, appeals his conviction and sentence of twelve years imprisonment for negligent child abuse resulting in death, contrary to NMSA 1978, § 30-6-1(C) (1973, as amended through 1989).[1] We granted certiorari pursuant to NMSA 1978, § 34-5-14(1972) (outlining the scope of our appellate jurisdiction) to review the Court of Appeals' decision affirming Mascareñas' conviction for child abuse. See also Rule 12-502 NMRA 2000. Mascareñas appeals his conviction on several grounds; 1) fundamental error occurred because the trial court failed to provide the jury with an instruction for negligent child abuse that adequately defined criminal negligence; 2) fundamental error occurred because the jury instructions omitted an essential element requiring that the State prove he acted "without justification"; 3) the child abuse statute is unconstitutionally vague; 4) the trial court committed reversible error by refusing to allow the testimony of his rebuttal expert witness regarding the public's awareness of shaken baby syndrome (SBS); 5) insufficient evidence exists to support the verdict; 6) the trial court improperly admitted evidence of Mascareñas' prior drug use and a prior injury to the child; 7) the State's opening statement and closing argument contained misleading statements about the law and facts not in evidence; 8) his conviction and twelve year sentence, despite lacking criminal intent, amounts to cruel and unusual punishment; and 9) the cumulative effect of the trial court's errors deprived him of his right to a fair trial. Because we reverse Mascareñas' conviction based on the deficiencies in the jury instructions and hold that sufficient evidence exists to support remand, we need not reach his other claims of error.

I.
{2} On October 6, 1996, emergency medical technicians were summoned to render assistance to six-month old Matthew Cisneros, who was suffering from a seizure. Upon arrival, the medical technicians found Matthew unresponsive and displaying signs that his brain was not receiving oxygen. He was transported to the emergency room at Holy Cross Hospital in Taos where tests revealed the likelihood that Matthew had suffered head trauma. The treating physician diagnosed Matthew's injuries as subdural hematoma, cerebral edema, and cardio-pulmonary arrest all of which were consistent with shaken baby syndrome. Matthew later went into complete respiratory and cardiac arrest and was successfully resuscitated. Matthew was *1223 transported via helicopter to the Pediatric Intensive Care Unit at University of New Mexico Hospital in Albuquerque. Over the next four days Matthew's neurologic functions deteriorated and brain death was declared on October 10, 1996. Matthew died after he was taken off life support. Mascareñas was subsequently arrested and charged with child abuse resulting in death.
{3} At trial, Mascareñas testified that Matthew was left in his care after Lisa, the child's mother, left for work in the morning. Matthew then became agitated and began crying. Mascareñas testified that he was frustrated that Matthew would not stop crying and admitted that he shook Matthew "hard once." He also testified that he tossed Matthew in the air, took him for a ride in his truck, and fed him in the attempt to calm him down. After returning home, Matthew had a seizure and Mascareñas testified that he and his cousin drove Matthew to Lisa's parents' home a short distance away and then called 911 to summon emergency medical assistance.
{4} During the trial, Matthew's treating doctors, a radiologist, and a pathologist, testified as the State's expert witnesses. They stated that the cause of death was SBS and that Matthew displayed classic SBS symptoms. The radiologist testified that CT scans of Matthew's head indicated that he had suffered two separate injuries, one occurring in the last twelve to eighteen hours, the other, ten to fourteen days earlier. Although the State's expert witnesses testified that it was their opinion that only forceful, repeated shaking could cause the severe injuries associated with SBS, one State expert witness did concede that there was a debate within the medical community as to whether one shake was sufficient to cause the injuries associated with SBS.
{5} Mascareñas based his defense on his lack of knowledge of SBS. He explained that his initial failure to tell family members and medical personnel that he had shaken Matthew was because he did not know that shaking a baby could cause the symptoms Matthew displayed. Medical personnel testified that Mascareñas answered their questions without hesitation. At trial he testified, "I hurt to know that my stupidity and ignorance caused this to my child, to my baby."
{6} Despite his defense, Mascareñas was convicted of negligent child abuse resulting in death and sentenced to twelve years in prison. He now appeals his conviction claiming the jury instructions failed to adequately define the requisite criminal negligence standard. We agree and hold that the failure to adequately define the criminal negligence standard constitutes fundamental error.

II.
{7} Mascareñas did not object to the jury instruction or tender a curative instruction. Because he failed to preserve this error for appeal, we review only for fundamental error. See State v. Sosa, 1997-NMSC-032, ¶ ¶ 23-24, 123 N.M. 564, 943 P.2d 1017 ("Having failed to proffer accurate instructions, object to instructions given, or otherwise preserve the issue for appeal ... we will limit our evaluation to the claim of fundamental error."); Rule 12-216 NMRA 2000 (setting forth preservation requirements). In State v. Clark, we stated, "To the extent alleged violations rise to the level of fundamental error, the question will be reviewed on appeal and, if fundamental error exists, a new trial will be ordered." 108 N.M. 288, 297, 772 P.2d 322, 331 (1989), habeas corpus relief granted on other grounds by, Clark v. Tansy, 118 N.M. 486, 882 P.2d 527 (1994). Fundamental error exists "when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." State v. Baca, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066. In State v. Garcia, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942), this Court observed, "[e]rror that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive."

III.
{8} Mascareñas claims that fundamental error occurred because the trial court failed to provide the jury with an instruction defining criminal negligence. The jury was provided an instruction which *1224 tracked the language of UJI 14-602 NMRA 1999.[2] The negligent child abuse instruction provided to the jury read:
For you to find Marcos Mascareñas guilty of child abuse resulting in death as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. Marcos Mascareñas negligently caused Matthew Cisneros to be placed in a situation which endangered the life or health of Matthew Cisneros or to be cruelly punished.
2. To find that Marcos Mascareñas negligently caused child abuse to occur, you must find that Marcos Mascareñas knew or should have known of the danger involved in forcefully shaking Matthew Cisneros and acted with reckless disregard for the safety or health of Matthew Cisneros.
3. Marcos Mascareñas['] actions resulted in the death of Matthew Cisneros.
4. Matthew Cisneros was under the age of 18.
5. This happened in New Mexico on or about the 6th day of October, 1996.
(emphasis added). Mascareñas argues that this instruction fails to adequately define the requisite culpable mental state for criminal negligence by including language confusing criminal negligence and civil negligence. Specifically, he argues that the use of the term "negligently" in the second element of the jury instruction, juxtaposed with the terms "knew or should have known" and "acted with a reckless disregard" creates the "distinct possibility that the jury understood the applicable negligence standard to criminalize `careless' conduct or perhaps only `extremely careless' conduct." See State v. Magby, 1998-NMSC-042, ¶ 15, 126 N.M. 361, 969 P.2d 965 (noting that neither understanding was correct) (citing State v. Yarborough, 1996-NMSC-068, ¶ 21, 122 N.M. 596, 930 P.2d 131).
{9} Criminal negligence has been defined as including "conduct which is reckless, wanton, or willful." State v. Arias, 115 N.M. 93, 96, 847 P.2d 327, 330 (Ct.App.1993),overruled on other grounds by State v. Abeyta, 1995-NMSC-52, 120 N.M. 233, 242, 901 P.2d 164, 173; see also State v. Harris, 41 N.M. 426, 428, 70 P.2d 757, 757 (1937) (defining criminal negligence as "conduct ... so reckless, wanton, and willful as to show an utter disregard for the safety of [others]"). In contrast, we have defined civil negligence to include conduct "a reasonably prudent person would foresee as involving an unreasonable risk of injury to [himself] [herself] or to another and which such a person, in the exercise of ordinary care, would not do." UJI 13-1601 NMRA 2000. Mascareñas argues that it is impossible to determine if jurors applied the incorrect civil negligence standard typically invoked by the "knew or should have known" language or the proper criminal negligence standard which requires a finding that he acted in reckless disregard of the danger.
{10} Both parties agree that the State must prove criminal negligence to secure a child abuse conviction under Section 30-6-1(C). See Santillanes v. State, 115 N.M. 215, 222, 849 P.2d 358, 365 (1993); see also Yarborough, 1996-NMSC-068, ¶ 18, 122 N.M. 596, 930 P.2d 131 ("[O]nly criminal negligence may be a predicate for a felony unless another intention is clearly expressed by the legislature."). The jury instruction provided by the trial court in this case conformed to the requirements articulated in Santillanes and tracked the language of Rule 14-602.[3]
{11} The substantive considerations in this case have already been resolved by our opinion in Magby where this Court addressed a challenge similar to Mascareñas' claim. See Magby, 1998-NMSC-042, 126 N.M. 361, 969 P.2d 965. In Magby, the defendant was charged with abuse of a child resulting in death, in violation of Section 30-6-1(C). After Magby removed the bit and *1225 bridle from a horse that a four-year-old girl was sitting on with her mother, the horse bolted into a gallop causing the child to fall. Id. ¶ 2. She later died from her injuries. The jury was provided with an instruction containing the same language as the instruction given at Mascareñas' trial: "To find that Robert Leon Magby negligently caused child abuse to occur, you must find that Robert Leon Magby knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of Heather Naylor." Id. ¶ 5 (emphasis omitted). Magby tendered a jury instruction that defined "reckless disregard" which the trial court improperly rejected.[4]Id. ¶ 9.
{12} At the outset, we note that because Magby offered a proper curative instruction, Magby's conviction was properly reversed under a reversible error standard. See State v. Cunningham, 2000-NMSC-009, ¶ ¶ 18-19, 128 N.M. 711, 998 P.2d 176. However, because Mascareñas failed to preserve the error we examine the jury instructions for fundamental error. Despite this difference, we find the substantive analysis of the errors in the jury instructions in Magby analogous and persuasive. In Magby, this Court held that the failure to define reckless disregard "result[ed] in the distinct possibility of juror confusion as to the mens rea necessary for conviction." 1998-NMSC-042, ¶ 1, 126 N.M. 361, 969 P.2d 965. This Court concluded that "the ordinary meaning of the terms `negligently' and `reckless disregard' may misdirect jurors as to the standard of negligence required for conviction, thereby rendering UJI 14-602 fatally ambiguous." Id. ¶ 13. Magby highlighted the "distinct possibility that the jury understood the applicable negligence standard to criminalize `careless' conduct or perhaps only `extremely careless' conduct" neither of which were correct interpretations. Id. ¶ 15. The Magby Court found that because it was impossible to determine whether the jury had a correct or incorrect understanding of the instructions, reversible error occurred. See id. ¶ ¶ 15-16. The same concerns are implicated in this case.
{13} The Court of Appeals, in its memorandum opinion, concluded that Magby was applicable to this case, but refused to address the merits of Mascareñas' claim stating that he had failed to properly preserve the issue for review and that "we decline to consider it as fundamental error." State v. Mascareñas, NMCA 18,871, slip op. at 4 (Jan. 13, 1999). The Court of Appeals also held that Magby's rule was not retroactively applicable. Id. We disagree and hold there is a distinct possibility that Mascareñas was convicted of child abuse based on the improper civil negligence standard, a crime which Santillanes determined does not exist in New Mexico. 115 N.M. at 219, 849 P.2d at 362 ("[O]ur interpretation of this criminal statute requires that the term `negligently' be interpreted to require a showing of criminal negligence instead of ordinary civil negligence."). The jury instructions failed to sufficiently define the proper negligence standard for child abuse, and there is no way to determine if the jury based their conviction on the terms "knew or should have known," language typically associated with a civil negligence standard, or on the proper criminal negligence standard which requires that they find defendant acted in "reckless disregard" of the safety of the child. Thus, we find that the trial court's failure to provide the jury with an instruction that adequately defined criminal negligence was an error.
{14} Despite the presence of this error, the State contends that the facts in this case demonstrate circumstances sufficient to distinguish Mascareñas' conduct from Magby's. The State argues that Magby's conduct could have been viewed as merely careless while Mascareñas "acted with great and repeated violence against his baby." Because of this, the State posits that "[i]t is highly unlikely that this jury did not have a correct understanding of the instructions [because] [t]he facts of this case leave little room for speculation as to whether shaking Matthew endangered his life or whether the Petitioner should have known of the danger involved and acted with reckless disregard of that *1226 danger." This argument is similar to that addressed by this Court in Santillanes. 115 N.M. at 223, 849 P.2d at 366. In Santillanes, this Court found that the trial court erred by failing to properly instruct the jury on criminal negligence. However, the Court held that it did not amount to reversible error, reasoning, "no rational jury could have concluded that Santillanes cut his nephew's throat ... without satisfying the standard of criminal negligence that we have adopted today." Id. The Santillanes Court was confident that "there could be no dispute that the element of criminal negligence was established by the evidence." Id. Based on the comparison of the defendant's conduct in Magby and the present case, as well as the reasoning articulated in Santillanes, the State argues that no rational jury could have found that Mascareñas shook his baby with such violence without satisfying the requisite criminal negligence standard. We disagree.
{15} In this case, the extent of how severely and how often Matthew was shaken was a disputed issue at trial, and the State's contention that Mascareñas shook Matthew with great and repeated violence was not conclusively established. If the jury believed Mascareñas' defense that he did not know that shaking Matthew could cause the injuries associated with SBS and that he shook the child only "hard once," it is possible that the jury could have, with an instruction properly defining criminal negligence, attributed his conduct to mere carelessness and not reckless disregard of Matthew's safety and health. Therefore, unlike the Santillanes Court, we cannot state with confidence that the jury concluded that Mascareñas' actions in shaking his baby satisfied the proper criminal negligence standard. Also, in this case, a rational jury might have concluded that Mascareñas shook his baby "hard once" without acting in "reckless disregard" of Matthew's safety. Thus, despite the State's arguments to the contrary, the factual analogies identified by the State are not relevant here.
{16} We hold that the trial court erred by failing to provide the jury with an instruction that adequately defined the proper culpable mens rea for negligent child abuse.

IV.
{17} In this Court's recent opinion in Cunningham, we held that a fundamental error analysis requires that we consider jury instructions as a whole to determine "the existence of circumstances that `shock the conscience' or implicate a fundamental unfairness... that would undermine judicial integrity if left unchecked." 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176. In the context of jury instructions, this Court has held that a reviewing appellate court must determine whether "a reasonable juror would have been confused or misdirected" by the jury instructions provided. See State v. Parish, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994). In State v. Allen, we stated that "[a]mbiguous instructions are those that are `capable of more than one interpretation.'" 2000-NMSC-002, ¶ 77, 128 N.M. 482, 994 P.2d 728 (quoting Parish, 118 N.M. at 42, 878 P.2d at 991). In this case, there were no other instructions provided to the jury that might have cured any ambiguities. See Parish, 118 N.M. at 41-42, 878 P.2d at 990-91 ("[I]f a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity.").
{18} Despite the error in the jury instruction, the State seeks to save the conviction by directing us to the language in State v. Carnes, 97 N.M. 76, 78, 636 P.2d 895, 897 (Ct.App.1981), which states, "The failure to instruct the jury on the definition or the amplification of the elements of an offense is not error when there has been a failure to request such an instruction." (emphasis added). Both the State and Court of Appeals cite with approval Magby's reference to Carnes, 97 N.M. at 78, 636 P.2d at 897, to support the argument that a failure to adequately define criminal negligence does not rise to the level of fundamental error and reversal would be warranted in future cases only when the defendant offered a curative definitional instruction. Mascareñas, NMCA 18,871, slip op. at 4 (Jan. 13, 1999) (citing Magby, 1998-NMSC-042, ¶ 18, 126 N.M. 361, 969 P.2d 965). Based on this language, the Court of Appeals inferred from Magby's citation to Carnes that the omission of the definition of "reckless disregard" in the instructions *1227 in this case did not rise to the level of fundamental error. See Mascareñas, NMCA 18,871, slip op. at 4 (Jan. 13, 1999). By relying on this language the State and the Court of Appeals presupposes that the instruction on "reckless disregard" in this case is a mere amplification or definition. We believe the definition of "reckless disregard" is of central importance to Mascareñas' defense, and therefore conclude that the Court of Appeals' and the State's interpretation of Magby and their reliance on Carnes is misplaced.
{19} Carnes and the cases it relied upon involved claims of error predicated on the trial court's failure to or refusal to accept jury instructions that required the amplification or definition of terms. Id. at 78, 636 P.2d at 897. The Court in Carnes held that the trial court's refusal to accept defendant's tendered instruction defining the term "hostage" in connection with kidnapping charges did not mandate reversal because the term was not a technical term and because "jurors could properly apply the common meaning of hostage ... and the application of the common meaning did not prejudice defendant." Carnes, 97 N.M. at 79, 636 P.2d at 898 (internal citation omitted). "[A] failure to give a definitional instruction is not a failure to instruct on an essential element." State v. Allen, 2000-NMSC-002, ¶ 76, 128 N.M. 482, 994 P.2d 728 (quoting State v. Crain, 1997-NMCA-101, ¶ 11, 124 N.M. 84, 946 P.2d 1095).
{20} In this case, clearly the opposite situation exists from that in Carnes. We find it instructive that in State v. Ervin, upon which Carnes relies, the Court stated, "The defendant did not make a tender nor was there evidence which would make this amplification a critical determination." 96 N.M. 366, 367, 630 P.2d 765, 766 (1981) (no evidence presented that the failure to define "dwelling" in connection with a burglary charge was a critical determination). Mascarñas is not merely seeking an amplification of a termhis argument that the jury instructions should have included a definition of "reckless disregard" to prevent confusion of the standard necessary to sustain a conviction is, under these facts, a "critical determination." In this case, the trial court's failure to provide the instruction was a critical determination akin to a missing elements instruction. See State v. Kirby, 1996-NMSC-069, ¶ ¶ 3-6, 122 N.M. 609, 930 P.2d 144 (characterizing a jury instruction that required the State prove the defendant unlawfully drove a wide mobile home transport vehicle "such that an ordinary person would anticipate that death might occur under the circumstances" as a failure to instruct on the essential element of criminal negligence). Because Mascareñas' defense theory rested on the claim that he was unaware of the risks associated with SBS, we agree that the instructions, as provided, failed to conform to the requirements we have outlined in Magby and had the potential effect of confusing the jury as to the proper standard of negligence to apply.
{21} There is simply no way to determine that the jury delivered its verdict on a legally adequate basis. Furthermore, Magby's finding that reversible error existed because the trial court refused defendant's tendered instruction does not preclude this Court from finding that the trial court's failure to define criminal negligence despite Mascareñas' failure to object or tender a curative instruction, also rises to the level of fundamental error. To allow Mascareñas' conviction to stand when there is a distinct possibility that he was convicted under a civil negligence standard and not the proper criminal negligence standard would result in a miscarriage of justice and therefore we find that fundamental error occurred.

V.
{22} Notwithstanding the existence of the fundamental error in the jury instructions, the State argues that Magby's discussion of prospective and retroactive application of judicial rules precludes relief in this case. The State directs us to language in Magby where this Court concluded that its holding had "no bearing on cases in which a jury has already rendered a verdict, unless a proper curative instruction was tendered and refused." Magby, 1998-NMSC-042, ¶ 18, 126 N.M. 361, 969 P.2d 965 (citing Carnes, 97 N.M. at 78, 636 P.2d at 897). Regarding the decision to only apply its holding prospectively, the Magby Court stated:
We stress that our holding on the negligent child abuse instruction tendered in *1228 this case is not applicable retroactively to other cases. As in Santillanes, our holding has only prospective application to cases in which a verdict has not been reached and those cases on direct review in which the issue was raised and preserved below.
Id., ¶ 18. Based on this language, the State argues this Court has no power to redress the error in the jury instructions because Mascareñas did not tender a curative instruction, a verdict had already been reached, and the case was pending review at the time Magby was decided without having properly preserved the issue for review. The Court of Appeals' unpublished memorandum opinion agreed with the State's argument, holding, "[Mascareñas] cannot avail himself of the Court's decision in Magby" because "[u]nlike that case [Mascareñas] failed to object to the jury instruction or tender a curative instruction." Mascareñas, NMCA 18,871, slip op. at 4 (Jan. 13, 1999). We do not disagree with Magby's recitation of the principles of retroactive and prospective application of judicial decisions, however, we hold that they are not relevant to this inquiry. Because this case involves a claim of error requiring the clarification of an existing rule, and not one premised on the application of a new judicial rule, we review for fundamental error and are not bound by Magby's prohibition of retroactive application in this case.

A.
{23} Magby relied on Santillanes to conclude that its holding on the negligent child abuse instruction was not applicable retroactively to other cases and only prospectively to those cases where a verdict had not been reached and to cases on direct review when the issue was properly preserved. See Magby, 1998-NMSC-042, ¶ 18, 126 N.M. 361, 969 P.2d 965. In Santillanes, the Court invoked its inherent power to "give its decision prospective or retroactive application without offending constitutional principles." 115 N.M. at 223, 849 P.2d at 366 (citing Lopez v. Maez, 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982)). The Santillanes Court, weighing the considerations outlined in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), concluded that the criminal negligence standard it adopted should be given only prospective application. See Santillanes, 115 N.M. at 224, 849 P.2d at 367.[5]
{24} An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a "new rule." Santillanes considered whether its "new interpretation of `negligently' under the child abuse statute, [was] to be given retrospective or prospective application." Santillanes, 115 N.M. at 223-25, 849 P.2d at 366-68 (emphasis added). There, we stated that "[t]he issue of retroactive effect arises only when a court's decision overturns prior case law or makes new law when law enforcement officers have relied on the prior state of the law." Id. at 223, 849 P.2d at 366; see also Jackson, 1996-NMSC-054, ¶ 5, 122 N.M. 433, 925 P.2d 1195 (characterizing a new rule as one "where an appellate decision overrules prior law and announces a new principle"); Beavers, 118 N.M. at 398, 881 P.2d at 1383 (quoting with approval Whenry v. Whenry, 98 N.M. 737, 739, 652 P.2d 1188, 1190 (1982), which stated *1229 "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was clearly not foreshadowed."). In Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court acknowledged the difficulties in considering whether a case announces a new rule stating:
"[W]e do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."
(internal citations omitted).
{25} Based on this reasoning, we find it more accurate to characterize the holding in Magby as merely a clarification of an existing rule and not a new rule. See Kirby, 1996-NMSC-069, ¶ 5, 122 N.M. 609, 930 P.2d 144. Magby's holding did not create a new rule that child abuse should be prosecuted under a criminal rather than civil negligence standardit merely requires that the jury be properly instructed on the criminal negligence standard previously established by Santillanes.
{26} We find support for this conclusion in Kirby, 1996-NMSC-069, 122 N.M. 609, 930 P.2d 144. In Kirby, the Court was faced with the question of whether it should apply a recently announced rule in Yarborough that "the difference `between reckless disregard' and `would anticipate that death might occur' evinces a failure to instruct on criminal negligence" retroactively or prospectively. Kirby concluded that "[t]he rule of Yarborough was not new law, it was a statement of what the law had been at all times applicable to the instant case." Kirby, 1996-NMSC-069, ¶ 5, 122 N.M. 609, 930 P.2d 144 (citing Yarborough, 120 N.M. at 672-73, 905 P.2d at 212-13).
{27} The same analysis is applicable to the present case. Magby's holding does not represent a new rule of law. It is merely a clarification of the existing rule of Santillanes: "[T]he mens rea element of negligence in the child abuse statute ... require[s] a showing of criminal negligence instead of ordinary civil negligence." Santillanes, 115 N.M. at 222, 849 P.2d at 365. In this case, as in Kirby, we are only clarifying a "statement of what the law had been at all times applicable to the instant case." Kirby, 1996-NMSC-069, ¶ 5, 122 N.M. 609, 930 P.2d 144. Magby did not overturn prior case law and instead merely requires a trial court to fulfill its obligation to ensure that a jury is properly instructed as to the correct mens rea requirement for conviction. See Santillanes, 115 N.M. at 223, 849 P.2d at 366; Jackson, 1996-NMSC-054, ¶ 5, 122 N.M. 433, 925 P.2d 1195. Thus, we overrule Magby only to the extent that it assumes its holding requiring more precise identification of the distinctions between criminal negligence and civil negligence is a new rule.

B.
{28} This Court is not bound by Magby's conclusions regarding retroactive application because in this case we have determined that fundamental error exists. We conclude that the reasoning advanced by Magby fails to contemplate the inherent power of this Court to review for fundamental error. See Cunningham, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176. In Kirby, we stated that retroactive application of new rules operates independently of a fundamental error analysis. 1996-NMSC-069, ¶ 4, 122 N.M. 609, 930 P.2d 144. Kirby also involved a claim of error in the jury instructions that was raised for the first time on appeal. Id. ¶ 3. A similar error in the jury instructions at issue in Kirby was adjudged to be reversible error in Yarborough. See Yarborough, 1996-NMSC-068, 122 N.M. 596, 930 P.2d 131. The application of Yarborough to the facts of Kirby would mandate a reversal, however, the Court of Appeals' unpublished memorandum opinion in Kirby declared that the rule Yarborough announced could only have prospective application and thus the Court of Appeals denied relief. See Kirby, 1996-NMSC-069, ¶ 4, 122 N.M. 609, 930 P.2d 144. We agree with the rule announced by this Court in Kirby that "retrospectivity is irrelevant *1230 if the trial court committed fundamental error in instructing the jury." Id. In reversing the Court of Appeals, Kirby concluded that the issue of whether Yarborough should be applied retroactively or prospectively was not a proper characterization of the issue. There, this Court highlighted the relationship of fundamental error to the question of retrospectivity: "the retrospectivity of Yarborough is irrelevant if the trial court committed fundamental error in instructing the jury." Id.
{29} Furthermore, we have stated: "An exception to the general rule barring review of questions not properly preserved below... applies in cases which involve fundamental error. Fundamental error cannot be waived." State v. Varela, 1999-NMSC-045, ¶ 11, 128 N.M. 454, 993 P.2d 1280 (quoting State v. Osborne, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991)). In State v. Acosta, the Court of Appeals cited with approval Kirby's conclusion that "cases are not final until there has been a judgment of conviction, sentence, and exhaustion of rights of appeal." 1997-NMCA-035, ¶ 10, 123 N.M. 273, 939 P.2d 1081. In the present case, Mascareñas had not already exhausted all his rights of appeal.
{30} Since we hold that this case involves a mere clarification of an existing rule and because we believe that fundamental error exists in this case, we hold that we are not bound by Magby's conclusion that its holding should be applied only prospectively.

VI.
{31} Mascareñas also claims that there was insufficient evidence to support his conviction. Although we reverse Mascareñas' conviction and remand for a new trial based on the deficiencies in the jury instructions, we believe it prudent to address his claim regarding the sufficiency of the evidence. See United States v. Miller, 952 F.2d 866, 874 (5th Cir.1992) ("Although not mandated by the double jeopardy clause, it is accordingly clearly the better practice for the appellate court on an initial appeal to dispose of any claim properly presented to it that the evidence at trial was legally insufficient to warrant the thus challenged conviction."); see also State v. Rosaire, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 (stating, "our review of the sufficiency of the evidence is analytically independent from the issue of the defect in the jury instruction."). By addressing Mascareñas' claim of insufficient evidence and determining that retrial is permissible, we ensure that no double jeopardy concerns are implicated. See Rosaire, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597 ("[W]e hold that where the trial court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction."); State v. Post, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App. 1989) ("If all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred [by the Double Jeopardy Clause].").
{32} At trial, emergency medical technicians, medical experts and several of Matthew's treating doctors testified about the extent of the injuries and suggested that only repeated hard shakes could have caused Matthew's injuries. Mascareñas also testified about the circumstances surrounding the shaking of the baby. We conclude that reasonable minds could infer that Mascareñas had the requisite intent necessary to support a conviction under the negligent child abuse statute and therefore that retrial is permissible. See State v. Allen, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 994 P.2d 728 (stating that circumstantial evidence may be used to prove intent); see also Rosaire, 1996-NMCA-115, ¶ 21, 123 N.M. 250, 939 P.2d 597 ("[W]e consider all of the evidence in support of conviction under the erroneous jury instruction to determine whether Defendant is entitled to acquittal as opposed to retrial.").

VII.
{33} Therefore, for the foregoing reasons, we reverse Mascareñas' conviction and remand for a new trial.
{34} IT IS SO ORDERED.
MINZNER, C.J., FRANCHINI, SERNA and MAES, JJ., concur.
NOTES
[1] We note that Mascareñas was convicted under the statute, as amended through 1989, prior to the adoption of the 1997 amendment to Section 30-6-1. Unless otherwise indicated, our discussion of Section 30-6-1 refers to the 1989 statute.
[2] This Court has adopted the new UJI Rule 14-602, effective February 1, 2000. Unless otherwise indicated, all references to Rule 14-602, are to the rule as it existed prior to the latest changes.
[3] We note that UJI 14-602 was amended in 1993 in response to the requirements articulated in Santillanes.
[4] The instruction tendered by Magby read:

"For you to find that the Defendant acted recklessly in this case, you must find that he knew or should have known that his conduct created a substantial and foreseeable risk, that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others."
[5] We note that our recent opinion in State v. Ulibarri recognized that Santillanes "failed to mention that the United States Supreme Court had abandoned the Linkletter approach." 1999-NMCA-142, ¶ ¶ 21-23, 128 N.M. 546, 994 P.2d 1164, aff'd, 2000-NMSC-007, 128 N.M. 686, 997 P.2d 818; see Griffith v. Kentucky, 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (stating that the "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"); Ulibarri also observed that "New Mexico courts have not dealt comprehensively with the issue of retroactivity in the context of criminal cases as yet." In the context of criminal cases, Ulibarri appears to continue New Mexico's departure from United States Supreme Court precedent on the issue of retroactivity by relying on the criteria set forth in Linkletter and echoed by Santillanes. See also, Jackson v. State, 1996-NMSC-054, ¶ 6, 122 N.M. 433, 925 P.2d 1195 (citing with approval Santillanes' and Linkletter 's case-by-case determination of prospective or retroactive application of new rules); see also Beavers v. Johnson Controls World Servs., 118 N.M. 391, 393, 881 P.2d 1376, 1378 (1994) (expressly declining to follow the United States Supreme Court's rule of universal retroactivity in civil cases announced in Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 113, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)). We note that our discussion of the issue of retroactive or prospective application of new rules is limited only to an explanation of why it is inapplicable to this case.