**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                              **NO. 28,703**

**CHRISTOPHER DIAZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Navin H. Jayaram, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

    Defendant appeals his convictions for two counts of child abuse for cruelly punishing his teenage step-daughter, Valandrea. We proposed to affirm in a notice of proposed summary disposition, and pursuant to seven extensions, Defendant has

filed a timely memorandum in opposition. Remaining unpersuaded by Defendant's memorandum, we affirm his convictions.

**Sufficiency**

Defendant challenges the sufficiency of the evidence to support his convictions for intentional child abuse contending that there was insufficient evidence to show that he intentionally "cruelly punished" Valandrea. [MIO 5-7]

In analyzing a sufficiency challenge on appeal, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). We do not weigh the evidence or substitute our judgment for that of the fact finder. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. Further, the jury is free to reject Defendant's version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Finally, we note that this Court cannot consider the merit of evidence that may have supported a different result. *State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995).

In order to convict Defendant of count two of child abuse, the State had to prove, beyond a reasonable doubt that: Defendant caused Valandrea to be cruelly punished; he acted intentionally and without justification; Valandrea was under the

2

age of eighteen (18); and the event happened on or about December 16, 2005. [RP 221] *See* UJI 14-604 NMRA. In order to convict Defendant of count four of child abuse, the State had to prove, beyond a reasonable doubt that: Defendant caused Valandrea to be cruelly punished; he acted intentionally and without justification, Valandrea was under the age of eighteen (18); and the event happened on or about April 18, 2005. [RP 223] *See* UJI 14-604.

In support of the convictions, Valandrea testified that she was under the age of eighteen when the alleged incidents of abuse occurred. [RP 162, 166, 175] As to count two, Valandrea testified that on December 16, 2005, she and Defendant were on the way to a basketball game for Valandrea's brother when Defendant questioned her about the money in her checking account. [RP 168] Defendant became angry and pushed Valandrea so she landed on her back on the floor. [RP 168] He kicked her three or four times with steel-toed boots, stepped on her stomach, and then used his body to bounce up and down on her so that she could not breathe. [RP 168] She testified that after Defendant got off of her and stood over her, he slapped her two or three times, and walked away. [RP 169]

As to count four, Valandrea testified that on April 5, 2005, she had forgotten to bring Defendant's "sugar tester" to an appointment. [RP 163] After they arrived

home to get the tester, Defendant grabbed a pair of needle-nose pliers and tried to grab Valandrea's stomach. [RP 163] When Valandrea got away, Defendant threw the pliers at her, striking her in the left thigh, going through her jeans and into her leg. [RP 163] Valandrea testified that she was bleeding and in pain and had to go to the hospital. [RP 164] She testified that she received six to seven stitches. [RP 164] An exhibit was entered showing the scar on Valandrea's leg that she said resulted from the pliers incident. [RP 164] It appears that further testimony established that the incident actually occurred on April 25, 2005. [RP 165, 185, 192]

Viewing the evidence in the light most favorable to the verdict, it is sufficient to support Defendant's convictions. We are aware that Defendant contends that there was other testimony calling Valandrea's veracity and her version of the events into question. [MIO 6-7] However, this contrary evidence does not warrant reversal on the grounds of insufficiency because we defer to the fact finder's decision when weighing any contradictory evidence and assessing the credibility of the witnesses. *See State v. Sosa*, 2000-NMSC-036, ¶ 8, 129 N.M. 767, 14 P.3d 32 (stating that the "credibility of witnesses is for the jury"); *State v. Riggs*, 114 N.M. 358, 362-63, 838 P.2d 975, 979-80 (1992) (stating that the jury determines questions of credibility and the weight to be given to evidence); *cf. State v. Caudillo*, 2003-NMCA-042, ¶ 7, 133

4

N.M. 468, 64 P.3d 495 (holding that, on appeal, the question is whether substantial evidence supports the verdict not whether substantial evidence would have also supported acquittal). Finally, we disagree with Defendant's statement that the only evidence supporting his conviction for count four was a photo of the scar because Defendant is ignoring Valandrea's testimony. [MIO 6] Therefore, we affirm on this issue.

**Instruction on "Cruelly Punish"**

Defendant contends that the district court erred in refusing to instruct the jury on the definition of "cruelly punish." [MIO 7-8] We disagree.

Neither the statute nor the uniform jury instructions set forth the meaning of "cruelly punish," and Defendant requested a non-uniform instruction which the district court refused. [MIO 7] *See* NMSA 1978, § 30-6-1(D)(2) (2005); UJI 14-604. We apply a de novo standard of review to the question of whether the court should have given Defendant's proposed instruction. *See State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996 ("The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo.").

It is well-established that the district court does not err in failing to give an instruction defining a term that has a common meaning. *See State v. Munoz*, 2006-NMSC-005, ¶ 24, 139 N.M. 106, 129 P.3d 142. However, Defendant contends that the term "cruelly punish" does not have a common meaning. [MIO 7] We disagree. *See id.* (concluding that, "[s]ince the phrase protracted period of time is self-explanatory and has an understandable and common meaning, there was no need for further definition" (emphasis omitted)).

We are of the opinion that a reasonable juror would not be confused by the term "cruelly punish" and could form his or her own opinion about what cruel punishment is without being specifically instructed. *See State v. Watchman*, 2005-NMCA-125, ¶ 11, 138 N.M. 488, 122 P.3d 855 (observing that, when reviewing the propriety of jury instructions, we consider "whether a reasonable juror would have been confused or misled by the instruction"); *cf. State v. Carnes*, 97 N.M. 76, 79, 636 P.2d 895, 898 (Ct. App. 1981) (holding that the district court's refusal to give the defendant's tendered instruction defining the term "hostage" in connection with kidnapping charges was not reversible error because hostage is not a technical term and a jury could apply the common meaning of that word). As the meaning of "cruelly punish"

is readily understandable, any failure to give an instruction on this term is not reversible error, and we affirm on this issue. *See Munoz*, 2006-NMSC-005, ¶¶ 23-26.

**Instruction on Parental Privilege**

Defendant contends that the district court erred in refusing Defendant's tendered instruction on parental privilege. [MIO 8-9] We disagree.

"A defendant is entitled to have the jury instructed on his theory of the case if that theory is supported by the evidence." *State v. Nieto*, 2000-NMSC-031, ¶ 15, 129 N.M. 688, 12 P.3d 442. We apply a de novo standard of review to the district court's denial of Defendant's proposed instruction. *See Salazar*, 1997-NMSC-044, ¶ 49.

In our notice of proposed summary disposition, we proposed to affirm because there was no evidence suggesting that the physical violence Defendant directed toward Valandrea was the result of his parental privilege. [RP 197-201] *Cf. State v. Lefevre*, 2005-NMCA-101, ¶ 13, 138 N.M. 174, 117 P.3d 980 (noting that "[t]he common law recognized a parental privilege to use moderate or reasonable physical force" in disciplining a child). To the contrary, Defendant denied ever using any physical force on Valandrea. [RP 197-201] *See Salazar*, 1997-NMSC-044, ¶ 53 (holding that the district court properly refused an instruction on voluntary manslaughter because the defendant never testified that he shot the victim because she provoked him; instead,

his testimony that the gun accidentally discharged "precludes the possibility that he acted out of provocation"). Furthermore, Valandrea's testimony does not suggest that Defendant used "moderate or reasonable physical force" in an effort to discipline her. [RP 163-164, 168-69]  As there was no evidence suggesting that Defendant used moderate or reasonable physical force in an effort to discipline Valandrea, we proposed to hold that there was no need to instruct the jury on this theory. *Cf. Lefevre*, 2005-NMCA-101, ¶ 17 (stating that if "a question of parental privilege exists, the [s]tate must prove beyond a reasonable doubt that the parent's conduct did not come within the privilege").

In his memorandum in opposition, Defendant claims that he was entitled to an instruction on parental privilege because the privilege is not inconsistent with his defense that he argued with Valandrea but he did not kick or kneel on her.  [MIO 9] We are unconvinced because admitting to an argument does not constitute evidence of "moderate or reasonable physical force" which is at the core of the parental privilege defense. *Id.* ¶ 13.

Finally, we note that in order to convict Defendant of the two counts of child abuse, the jury had to find that Defendant caused Valandrea to be "cruelly punished," and he acted "intentionally and without justification."  [RP 221, 223]  This finding

8

negates the need to give an instruction on parental privilege. *See id.* ¶ 16 (recognizing that a parent "has a privilege to use moderate or reasonable physical force . . . [but t]he physical force cannot be cruel or excessive if it is to be justified"); *cf. Nieto*, 2000-NMSC-031, ¶ 15 (recognizing that the district court need not give an instruction if the element of the crime is adequately defined in other instructions given). Whether Defendant was justified in striking Valandrea in a manner that was neither cruel nor excessive is subsumed by the child abuse instructions. A jury finding that Defendant cruelly punished Valandrea and that he acted without justification negates a finding that he was using reasonable physical force to discipline her. *See Lefevre*, 2005-NMCA-101, ¶ 16; *cf. Nieto*, 2000-NMSC-031, ¶ 15. Therefore, we affirm on this issue.

**Motion to Sever**

Defendant claims that the district court erred in denying Defendant's motion to sever, filed on the day of trial and denied as untimely. [MIO 9-10; RP 140, 160] We affirm.

All of the charges against Defendant concern acts of physical violence against one victim over a one year period. Thus, they are "of the same or similar character" and "based on the same conduct or on a series of acts" and must be joined pursuant

9

to Rule 5-203(A) NMRA; *see State v. Gallegos*, 2007-NMSC-007, ¶ 10, 141 N.M. 185, 152 P.3d 828 (recognizing that "Rule 5-203(A) is not a discretionary or permissive rule; it demands that the [s]tate join certain charges"). However, severance is appropriate "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses." Rule 5-203(C). The decision to grant or deny a motion to sever offenses charged in a single criminal information is within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *See State v. Duffy*, 1998-NMSC-014, ¶ 43, 126 N.M. 132, 967 P.2d 807. Our review of a district court's decision is "exceedingly narrow" and limited to the question of whether the joinder created "an appreciable risk that the jury convicted for illegitimate reasons." *Id.* (internal quotation marks and citation omitted).

Defendant does not deny that an amended criminal information was filed on April 20, 2007, yet the matter did not go to trial until December 18, 2007. [RP 62, 145; MIO 10] He does not deny that he never suggested that severance was warranted before filing the severance motion on the day of trial after the jury had already been selected. [RP 160; MIO 10] Allowing severance at that point would have significantly affected the court's ability to manage its docket in a timely manner; the district court was therefore justified in denying the motion as untimely.

Denial was also justified because Defendant failed to make a showing that he was prejudiced by the failure to sever. *See id.* Defendant contends that denying the motion to sever greatly prejudiced him because "it was difficult to defend against the counts since one count could not be easily differentiated than the other when they were all put together in the charging document." [MIO 10] We are not persuaded.

Each count in the amended criminal information involved discrete dates, [RP 62-63] and the district court's actions indicate that the counts were easily differentiated. Counts one and three were dismissed at trial because no testimony was proffered to prove these counts. [MIO 3-4] As no testimony was proffered, Defendant could not have been hindered in his defense or prejudiced by the failure to sever these counts.

Counts five and six were also dismissed by the district court. [MIO 4] As to count five, Valandrea alleged that Defendant had inflicted a thumb injury on her, but could not remember when. [MIO 4] That count was dismissed for lack of evidence. [MIO 4] Count six involves allegations that Valandrea was "forced to run away from home" which was a form of cruel punishment. [MIO 4] The court also dismissed this count. [MIO 4]

Defendant was convicted of counts two and four which involve discrete acts which resulted in injury on two discrete occasions, a physical altercation on December 16, 2005, and an incident involving pliers in April 2005. [RP 163-164, 168-169] Given the lack of evidence introduced as to the remaining counts and the specificity of the evidence concerning counts two and four, we are not convinced that Defendant was hindered in his defense or suffered any prejudice by the failure to sever the six counts at the beginning of trial.

Finally, as discussed in our notice of proposed summary disposition, there is nothing in Defendant's motion or in his arguments before the district court indicating that he provided any specific reasons that might warrant severance beyond the reasons that would apply in any case where a defendant is charged with committing multiple acts of abuse against the same victim. [RP 140, 159-160] Juries are routinely trusted with deciding cases which involve more than one charge and are instructed, as the jury was in this case, to consider each charge separately. *See* UJI 14-6004 NMRA. [RP 231] Therefore, we are unconvinced that the district court abused its discretion in failing to sever the counts against Defendant, and we affirm on this issue.

12

**Failure to Provide a Statement of Facts**

Defendant claims that the district court erred in failing to order the State to provide a "statement of facts." [MIO 10-13] We disagree.

On October 4, 2006, the State filed a criminal information charging Defendant with six counts of child abuse, and all of the counts had the same date range, January 2005 to January 2006. [RP 1-2; MIO 2] On March 15, 2007, Defendant moved for a statement of facts asking the State to specify the dates when the child abuse allegedly occurred and to specify the actions of Defendant on the respective dates. [RP 45-46; MIO 2] An amended criminal information was filed on April 20, 2007. [RP 62-63] The amended criminal information specifies that the abuse leading to count two occurred on or about December 16, 2005, and the abuse leading to count four occurred on or about April 18, 2005. [RP 62-63] The amended criminal information specifies that count one concerns the month of January 2005, count three concerns December 2005, count five concerns July 2005, and count six specifies abuse occurring January 13, 2006. [RP 62-63]

At a status conference on April 30, 2007, the State maintained that Defendant had all of the information necessary to prepare his defense based upon the information provided at the preliminary hearing. [RP 71-72] After the conference, Defendant did

not file a motion to compel the State to produce a statement of facts nor did Defendant ever identify the missing information that he believed was critical for his defense. *Cf.* Rule 5-205(A) and (C) NMRA (setting forth the allegations that need not be contained in an indictment or criminal information but which may be included in a statement of facts including: (1) time of the commission of offense; (2) place of the commission of offense; (3) means by which the offense was committed; and (6) intent with which an act was done). Defendant then moved to dismiss the charges against him on the day of trial because the State had failed to produce a statement of facts. [RP 135] The district court denied the motion. [MIO 10]

Defendant claims that his motion for statement of facts should have been granted because otherwise the jury could potentially convict him more than once for a single act. [MIO 12] He cites to case law standing for the proposition that an indictment must be sufficiently particular to apprise the defendant of the offenses charged so that the defendant can adequately prepare his defense. [MIO 11] *Cf. State v. Baldonado*, 1998-NMCA-040, ¶¶ 26-28, 124 N.M. 745, 955 P.2d 214 (stating that lengthy charging periods require careful scrutiny to ensure that a defendant's due process rights are protected). We are unpersuaded.

14

First, the amended criminal information specifies discrete time periods for each count of alleged child abuse. [RP 62-63] We fail to understand how the defense could have been hindered or the jury could have mistakenly convicted Defendant more than once for a single act, given the discrete time periods in each count. Furthermore, as previously discussed in addressing Defendant's motion to sever, the counts were sufficiently differentiated as to time period of wrongs alleged so as to allow the district court to dismiss all of the counts except counts two and four. [RP 190-193]

In light of the discrete time periods set forth in the amended criminal information, the information apparently provided at the preliminary hearing, and the district court's dismissal of counts one, three, five and six, we conclude that Defendant was sufficiently apprised of the charges against him, and the district court's failure to order the State to provide a statement of facts did not cause Defendant to suffer any prejudice to his defense. *Cf. State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994) ("In the absence of prejudice, there is no reversible error."). Therefore, the district court did not abuse its discretion in denying Defendant's motion for statement of facts on the day of trial. *Cf. Baldonado*, 1998-NMCA-040, ¶ 32 (holding that even if the court finds that the charging period

is not "reasonably particular," it must address whether the defendant was prejudiced by the overly-broad period (internal quoation marks and citation omitted)); *State v. Archuleta,* 82 N.M. 378, 384, 482 P.2d 242, 248 (Ct. App. 1970) (holding that the district court did not err in denying the motion for a bill of particulars because the district court had found that the preliminary hearing transcript "afforded reasonable information as to the nature and character of the crime charged," and nothing indicated that the district court's finding was in error).

**Improper Character Evidence and Prosecutorial Misconduct**

Defendant contends that a mistrial should have been granted due to the State's improper introduction of character evidence and the prosecutor's misconduct by eliciting improper testimony from Valandrea. [MIO 13] We affirm.

As to the improper character evidence, in our notice of proposed summary disposition, we stated that we were unable to thoroughly analyze this issue because Defendant failed to provide any details about the improper character evidence that was allegedly introduced by the State. *See* Rule 12-208(D)(3) NMRA; *Thornton v. Gamble*, 101 N.M. 764, 769, 688 P.2d 1268, 1273 (Ct. App. 1984). We instructed Defendant to provide us with the substance of the allegedly improper evidence and whether he objected to its introduction.

16

In his memorandum in opposition, Defendant contends that Valandrea mentioned at trial that her mother left the home because Defendant allegedly abused her. [MIO 13] He also contends that the prosecutor committed misconduct by eliciting Valandrea's testimony that her mother left their house because of Defendant's abuse. [MIO 13-15]

After Valandrea made the improper statement, Defendant objected and moved for a mistrial. [RP 163; MIO 13-15] We review the district court's ruling denying that motion for an abuse of discretion. *See State v. Gonzales,* 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the district court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

In our earlier notice, we proposed to hold that the court did not abuse its discretion in denying the mistrial. First, contrary to Defendant's contention, we noted that there is no indication that the improper statement resulted from any misconduct by the prosecutor. [RP 163; MIO 14-15] *See State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983) (distinguishing a case in which a prosecutor deliberately

17

asked a question in order to elicit improper evidence), *abrogated by State v. Ruiz*, 2007-NMCA-014, 141 N.M. 53, 150 P.3d 1003. Instead, Valandrea appeared to offer the statement as to why her mother left without any prompting from the prosecutor. [RP 163] Moreover, we observed that the district court instructed the jurors to disregard Valandrea's statement, [RP 163] and "[t]he overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." *Gonzales*, 2000-NMSC-028, ¶ 37 (internal quotation marks and citation omitted). In light of the curative instruction, we were unconvinced that Defendant was prejudiced by Valandrea's statement. *See State v. Trujillo*, 2002-NMSC-005, ¶ 45, 131 N.M. 709, 42 P.3d 814 ("Although the statement may have had some prejudicial effect, [the d]efendant has not demonstrated that had this statement not come in, the result of the proceeding would have been different.").

In his memorandum in opposition, Defendant provides no additional support for his contention that he was prejudiced by Valandrea's statement. [MIO 14-15] However, he claims that this one instance of prosecutorial misconduct was "so egregious that it warrants a new trial." [MIO 15] We are unpersuaded and therefore affirm on this issue.

18

**Safehouse Interviews**

Defendant claims that the district court erred in not ordering the State to produce the safe house interviews of Valandrea and her sister and/or in failing to impose sanctions on the State for its failure to produce copies of these interviews. [MIO 15] Defendant does not dispute our observation in the notice of proposed summary disposition that he never filed a motion to compel production of this information nor sought the court's assistance in obtaining this information until he sought seeking dismissal of the charges on the day of trial in part based on the State's failure to provide copies of the safe house interviews. [RP 142-43, 159-160; MIO 15]

Based upon Defendant's failure to seek the court's assistance in obtaining the safe house interviews and the lack of any order compelling the State to produce these interviews, we proposed to hold that the district court did not err in failing to order production of the interviews or in failing to impose sanctions for the State's failure to produce these interviews. *Cf. State v. Gonzales*, 1996-NMCA-026, ¶ 10, 121 N.M. 421, 912 P.2d 297 (reviewing district court's sanction for violation of discovery order for abuse of discretion). We also proposed to hold the Defendant suffered no prejudice from the State's failure to produce these interviews because there was no suggestion that the interviews would provide exculpatory information. [RP 16, 193-

19

197] *See State v. Fairweather*, 116 N.M. 456, 463, 863 P.2d 1077, 1084 (1993) ("The mere assertion of prejudice, without more, is insufficient to establish prejudicial error[.]"); *Fernandez*, 117 N.M. at 677, 875 P.2d at 1108.

In his memorandum in opposition, Defendant claims that he was prejudiced by the failure to have access to these interviews.  [MIO 15]  However, in the absence of any showing of prejudice, we affirm on this issue. *See Fairweather*, 116 N.M. at 463, 863 P.2d at 1084.

**CONCLUSION**

For the foregoing reasons as well as those set forth in our notice of proposed disposition, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

20