1998-NMSC-042

969 P.2d 965

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Robert Leon MAGBY, Defendant–Appellant.**

**No. 24471.**

Supreme Court of New Mexico.

Nov. 17, 1998.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Appellant.

Hon. Tom Udall, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, for Appellee.

*OPINION*

FRANCHINI, Chief Justice.

{1} Following a horseback-riding accident, Defendant Robert Leon Magby was convicted of child abuse resulting in death. We hold that the trial court improperly refused a jury instruction tendered by defense counsel, resulting in the distinct possibility of juror confusion as to the *mens rea* necessary for conviction. We therefore reverse Magby's conviction and remand for a new trial.

## FACTS AND PROCEDURAL POSTURE

{2} Four-year-old Heather Naylor was killed when she fell from the back of the horse she was riding with her mother, Cheryl Naylor. According to Cheryl, just prior to the accident Magby had been "joking around" with her and "playfully" removed the bridle and bit from her horse, which was standing still at the time. Suddenly, the horse bolted into a gallop, and without a bridle or bit, Cheryl was unable to control the animal or slow it down. Heather was thrown to the ground, and her mother jumped from the horse to assist her. Heather suffered grievous injuries, and she died soon after being transported to a nearby hospital.

{3} The State filed a criminal information against Magby as follows:

On or about the 10th day of February, 1995, the above-named defendant *negligently* caused Heather Naylor, a child, to be placed in a situation that might endanger her life or health, resulting in the death of Heather Naylor, contrary to NMSA 1978, § 30-6-1 [1973, as amended through 1989].

(Emphasis added.) Magby was charged with abuse of a child resulting in death, a first-degree felony, contrary to Section 30-6-1(C). Section 30-6-1(C) provides, in pertinent part, that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be ... placed in a situation that may endanger the child's life or health ...."

{4} There were several eyewitnesses who testified at trial, but none had any idea why Cheryl's horse had bolted. Cheryl testified that the horse seemed to be driven by fear. Neither Cheryl nor any other witness, however, observed anything that might have spooked the horse. The horse was uniformly described as a "quiet, gentle horse," "real sweet and gentle," and "real gentle-natured ." One witness, however, testified that the only horse that is totally predictable is one that is "stuffed," and Magby's expert witness, a horse trainer, characterized Magby's act of removing the bridle and bit as "unwise" though not "reckless."

{5} The jury was instructed:

To find that Robert Leon Magby *negligently* caused child abuse to occur, you must find that Robert Leon Magby *knew or should have known of the danger involved and acted with a reckless disregard* for the safety or health of Heather Naylor; ....

(Emphases added.) *See* UJI 14–602 NMRA 1998 (negligent child abuse instruction). As we discuss more fully below, the trial court refused defense counsel's tender of an instruction defining the term "reckless disregard."

{6} The trial court, at the request of the State, further instructed the jury in the following manner:

In addition to the other elements of child abuse resulting in death, the state must prove to your satisfaction beyond a reasonable doubt that the defendant *acted intentionally* when he committed the crime. *A person acts intentionally when he purposely does an act* which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct [and] any statements made by him.

(Emphasis added.) *See* UJI 14–141 NMRA 1998 (general criminal intent instruction).

{7} The jury found Magby guilty of child abuse resulting in death. Pursuant to NMSA 1978, § 31–18–15(A)(1) (1977, as amended through 1994) (prescribing basic penalty for non-capital, first-degree felony), the trial judge sentenced Magby to 18 years'

imprisonment, but mitigated the sentence to 12 years because "Defendant did not have any intent to injure the victim." *See* NMSA 1978, § 31–18–15.1 (1979, as amended in 1993) (allowing for mitigation of up to one-third of sentence). Magby appealed his conviction, and the New Mexico Court of Appeals certified the case to this Court. We accepted certification and now take this opportunity to clarify the proper jury instructions to be given in proceedings where a defendant is charged with negligent child abuse.

## DISCUSSION

### Standard of Review

{8} "The propriety of jury instructions given or denied is a mixed question of law and fact." *State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "Mixed questions of law and fact are reviewed de novo." *Id.*

### Whether the Trial Court Erred in Refusing Defense Counsel's Requested Instruction

{9} Defense counsel tendered the following instruction:

For you to find that the Defendant acted recklessly in this case, you must find that he knew or should have known that his conduct created a substantial and foreseeable risk, that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others.

This instruction is patterned on the definition of "recklessly" contained in UJI 14–1704 NMRA 1998 for use in negligent arson cases. Magby argues that the instruction was necessary to prevent the jury from convicting him of mere civil negligence, as opposed to the criminal negligence standard required by *Santillanes v. State*, 115 N.M. 215, 219, 849 P.2d 358, 362 (1993).

{10} In *Santillanes*, this Court construed Section 30–6–1, which remained unchanged at the time of Magby's trial, "as aiming to punish conduct that is morally culpable, not merely inadvertent." 115 N.M. at 222, 849 P.2d at 365. We observed that, "when moral condemnation and social opprobrium attach

to the conviction of a crime, the crime should typically reflect a mental state warranting such contempt." *Id.* Thus, we held: "We interpret the *mens rea* element of negligence in the child abuse statute, therefore, to require a showing of criminal negligence instead of ordinary civil negligence." *Id.* On this basis, we announced that, to find a defendant guilty of criminal negligence in the context of child abuse, the jury must find that "the defendant knew or should have known of the danger involved and acted with *reckless disregard* for the safety or health of the child." *Id.* (emphasis added); *see* UJI 14–602 (tracking this language); *see also* § 30–6–1(A)(3) (as amended in 1997) (codifying the foregoing language of *Santillanes* as the definition of "negligently"). *Accord State v. Harris*, 41 N.M. 426, 428, 70 P.2d 757, 757 (1937) (holding that conduct "not amounting to a reckless, willful and wanton disregard of consequences ... cannot be made the basis of a criminal action"); *State v. Arias*, 115 N.M. 93, 96, 847 P.2d 327, 330 (Ct.App.1993) ("Criminal negligence includes conduct which is reckless, wanton, or willful.").

{11} The facts presented in *Santillanes*, however, did not prompt us to consider the need for an instruction defining "reckless disregard" in cases alleging criminally negligent child abuse. There, we were able to determine, as a matter of law, that "no rational jury could have concluded that Santillanes cut his nephew's throat ... without satisfying the standard of criminal negligence that we have adopted today." 115 N.M. at 223, 849 P.2d at 366.

{12} In this case, Magby calls our attention to the possibility of juror confusion over the concept of "reckless disregard" as it is used in UJI 14–602. Magby contends that UJI 14–602 could confuse jurors on the critical issue of *mens rea* because it uses the words "negligently" and "with a reckless disregard" in the same sentence, essentially equating the two concepts. *See supra* ¶ 5 (jury instruction modeled on UJI 14–602). The dictionary definitions of these terms are indeed very similar, "negligent" being defined as:

1. Habitually guilty of neglect; lacking in due care or concern.

2. Extremely careless.

and "reckless" as:

1. a. Heedless or careless. b. Headstrong; rash.
2. Having no regard for consequences; uncontrolled; wild.

THE AMERICAN HERITAGE DICTIONARY 879, 1088 (1973) (examples omitted); *see* WEBSTER'S II, NEW RIVERSIDE DICTIONARY 471, 585 (Office ed.1984) (defining "negligent" as "Marked by or inclined to neglect, esp. habitually" and "Extremely heedless" and defining "reckless" as "Careless" and "Heedless of consequences: rash").

 {13} Absent express definition of a term in an instruction, words in jury instructions should usually be understood according to their ordinary meaning. *Cf. Santillanes*, 115 N.M. at 220, 849 P.2d at 363 (words in a statute should be given their ordinary meaning unless the Legislature has indicated a different intent); *State v. Gonzales*, 112 N.M. 544, 553, 817 P.2d 1186, 1195 (1991) (noting that words used in their ordinary sense in jury instructions generally do not require express definition). Lay dictionaries may be used to discern the ordinary meaning of words used in jury instructions. *See State v. Puga*, 85 N.M. 204, 207, 510 P.2d 1075, 1078 (Ct.App.1973) ("theft"); *State v. Boyles*, 24 N.M. 464, 466–67, 174 P. 423, 423 (1918) ("flourish"). Magby argues that the ordinary meaning of the terms "negligently" and "reckless disregard" may misdirect jurors as to the standard of negligence required for conviction, thereby rendering UJI 14–602 fatally ambiguous. We are persuaded by this argument.

 {14} "Use of an ambiguous jury instruction will constitute reversible error where a reasonable juror would have been confused or misdirected by that instruction." *State v. Sosa*, 1997–NMSC–032, ¶ 25, 123 N.M. 564, 943 P.2d 1017. If a jury instruction is susceptible to more than one interpretation, then the reviewing court must "evaluate whether another part of the jury instructions satisfactorily cures the ambiguity." *State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994). An instruction is fatally ambiguous when there is "no way to determine" whether the jury had a correct or incorrect understanding of the instruction. *Cf. id.*

{15} In view of the foregoing dictionary definitions of "negligent" and "reckless," there is a distinct possibility that the jury understood the applicable negligence standard to criminalize "careless" conduct or perhaps only "extremely careless" conduct. Neither understanding is correct. *See State v. Yarborough*, 1996–NMSC–068, ¶ 21, 122 N.M. 596, 930 P.2d 131 (merely careless driving cannot form basis for involuntary manslaughter conviction, which requires showing of criminal negligence); *cf. Paiz v. State Farm Fire and Cas. Co.*, 118 N.M. 203, 211, 880 P.2d 300, 308 (1994) (holding in a punitive damages case that "a defendant acting with gross negligence ... cannot, solely because the defendant acted with such negligence, be regarded as having a culpable or 'evil' state of mind"). Under the lone instruction given to the jury, there is no reason to suppose the jury correctly interpreted UJI 14–602. It is equally likely that the jurors understood the terms "negligently" and "reckless disregard" to imply some degree of carelessness as it is that they recognized the necessity of finding a culpable mental state in the defendant.

{16} Defense counsel's tendered instruction would have cured this ambiguity by defining the concept "reckless disregard" in detail and in a separate instruction from the confusing reference to "negligently" in UJI 14–602. In this way, the distinct possibility of juror confusion over the *mens rea* necessary for conviction could have been avoided. We therefore hold that the trial court improperly refused defense counsel's curative instruction. *See State v. Mankiller*, 104 N.M. 461, 468, 722 P.2d 1183, 1190 (Ct.App. 1986) (further instruction necessary where element of offense requires amplification or definition in order to be understood); *see also State v. Carnes*, 97 N.M. 76, 78–79, 636 P.2d 895, 897–98 (Ct.App.1981) (requested instruction need not be given where jurors could properly apply common meaning of terms).

{17} We note that virtually every uniform jury instruction that utilizes the terms

"reckless" or "recklessly" provides for an express definition of those terms. *See* UJI 13–861 NMRA 1998 (punitive damages in contracts and UCC sales cases); UJI 13–1009, –1011, –1012 NMRA 1998 (defamation); UJI 13–1827 NMRA 1998 (punitive damages generally); UJI 14–240, –240A, –241 (homicide or great bodily injury by vehicle); UJI 14–342, –343, –344 NMRA 1998 (shooting at or from a motor vehicle); UJI 14–1703, –1704 NMRA 1998 (negligent arson); UJI 14–4504 NMRA 1998 (reckless driving). *But see* UJI 13–1628 NMRA 1998 (intentional infliction of emotional distress); UJI 13–1633 NMRA 1998 (fraud); UJI 14–602, –603, –604, –605 NMRA 1998 (negligently causing or permitting child abuse). Of the instructions that do not expressly define "reckless" or "recklessly," only UJI 14–602 through –605 involve considerations of negligence. An express definition of "reckless disregard" would be particularly appropriate for these instructions because the distinction between criminal negligence and civil negligence turns on an understanding of the concept of recklessness. *See Harris,* 41 N.M. at 428, 70 P.2d at 757 (distinguishing, somewhat tautologically, between criminal and civil negligence as follows: criminal negligence involves "conduct ... so reckless, wanton, and willful, as to show an utter disregard for the safety of [others]," while mere civil negligence is conduct "not amounting to a reckless, willful and wanton disregard of consequences ...."); *see also* UJI 14–1704 committee commentary ("The concept of recklessness is the same as criminal negligence."). We therefore direct the UJI Criminal Committee to formulate a definition of "reckless disregard" similar to the one tendered by defense counsel in this case for use in negligent child abuse cases in the future.

■ {18} We stress that our holding on the negligent child abuse instruction tendered in this case is not applicable retroactively to other cases. As in *Santillanes,* our holding has only prospective application to cases in which a verdict has not been reached and those cases on direct review in which the issue was raised and preserved below. *See* 115 N.M. at 223–25, 849 P.2d at 366–68. It therefore has no bearing on cases in which a jury has already rendered a verdict, unless a

proper curative instruction was tendered and refused. *See Carnes,* 97 N.M. at 78, 636 P.2d at 897 (no error in failure to give definitional instruction where party has not requested such an instruction).

{19} We recognize, as the State points out, that UJI 14–602 as currently written tracks the statutory elements of the offense defined in Section 30–6–1(C) and that, except for its omission of the adjective "criminal" before "negligence," the instruction reflects the language of *Santillanes. See State v. Fuentes,* 85 N.M. 274, 276, 511 P.2d 760, 762 (Ct.App.1973) (instructions regarding required *mens rea* are generally sufficient when phrased in terms of the applicable statute, provided the statute is read in light of decisional law on criminal intent). We are also aware of the general rule that uniform jury instructions are presumed to be correct. *See State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) ("[T]his Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of the law ...."). Given the distinct possibility of juror confusion discussed above, however, this case illustrates that there are exceptions to the foregoing presumptions and that this is a proper case in which to modify UJI 14–602. *See id.* at 795, 867 P.2d at 1177 ("The Supreme Court will amend, modify, or abolish uniform jury instructions when such instructions are erroneous."); *see also* Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* 190–91 (1992) (discussing the maxim: "The exception proves the rule").

■ {20} The State also argues that Magby "withdrew" his tendered instruction defining "reckless disregard" and that, therefore, this issue was not properly preserved for review in this Court. Contrary to the State's argument, however, the record shows that the trial court individually marked Magby's requested instructions "Refused," not "Withdrawn," signing his name below each such designation. Moreover, as the State acknowledges, there was considerable disagreement between the parties concerning the proper instructions to give the jury, and

**366**

each side had the opportunity to contest the other's requested instructions, with the trial court ultimately concluding, "I'm going to stick with the UJI ." Based on these circumstances, we conclude that this issue was properly preserved. *See Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (preservation requirement should be applied with its purposes in mind, which are to alert the trial court to error in time for correction and to give opposing counsel fair opportunity to meet the case presented by the other side).

*Whether Instructing the Jury on General Criminal Intent Amounts to Reversible Error*

{21} Magby argues that the trial court should not have instructed the jury on general criminal intent because the State's theory of prosecution throughout the case was exclusively that Magby's conduct was negligent. The State concedes that the instruction should not have been given, but contends that the error was harmless. In light of our holding on the failure of the trial court to accept the criminal negligence instruction tendered by defense counsel, it would be a speculative exercise for us to try to determine whether the intent instruction was only harmless error. We therefore do not reach this issue.

*CONCLUSION*

{22} The trial court improperly refused defense counsel's tendered instruction defining the term "reckless disregard" in UJI 14–602. We therefore reverse Magby's conviction and remand for a new trial. UJI 14–602 through –605 are to be modified by the UJI Criminal Committee to include a definition of "reckless disregard." In the meantime, the instruction tendered by defense counsel in this case will serve as an adequate definition of that term.

{23} **IT IS SO ORDERED.**

BACA, MINZNER, SERNA and McKINNON, JJ., concur.